[No. 37945.   Department One.   July 15, 1965.]

FEDERAL FINANCE COMPANY, INC., *Appellant,* v. NEAL A. HUMISTON *et al., Respondents.**

*Daniel W. Giboney,* for appellant.

*Francis P. Cael,* for respondents.

HALE, J.—Evanescent as the moonmist from which it was named, the household china Captain Neal A. Humiston bought from Lyle L. Sparber vanished before it materialized. Sparber promised the china, but failed to deliver. Federal Finance Company, Sparber's assignee, demanded payment. Captain Humiston said he would not pay for something he did not receive—and thereby hangs this case.

Neal Humiston and Lyle Sparber were boyhood chums in Potlatch, Idaho; they played football on the same high school team and visited back and forth in each other's home. After high school, they separated and went off to

*Reported in 404 P.2d 465.

war. Eventually Sparber took a job selling china under the name of Winfield Sales; Humiston renewed his military career and became a Captain in the Air Force. Their paths crossed 10 years later in Spokane when Sparber sold Humiston a goodly quantity of china.

Sparber sold Humiston two 97-piece sets of the Moon Mist pattern and 24 coffee mugs at a price of $1,114.88. A $4 fee for "filing and credit report" plus $236 to cover what the contract called "time charges" brought the total price to $1,354.88. Captain Humiston made a down payment of $88.88, leaving a balance of $1,266. Sparber told Humiston the china would be delivered in about 6 weeks.

They executed a written agreement dated October 4, 1962, on a printed form labeled "Conditional Sale Contract" which designated Winfield Sales, by Lyle L. Sparber, as seller and Neal A. Humiston as purchaser. It declared that "The purchaser shall pay to Federal Finance Co., Inc. the deferred balance of $1266.00 in 23 installments of $52.75 each, and a final installment of $52.75 commencing Nov. 18 1962." The contract also said that "The Purchaser, after thorough examination, buys and accepts delivery of the above described chattels on date hereof and promises to pay to the order of the Seller the said Time Balance in accordance with payment schedule set forth above."

Winfield Sales, by Lyle L. Sparber, owner, signed and delivered to Federal Finance Company a separate printed instrument denominated "Assignment and Guarantee," dated October 5, 1962, assigning and transferring to Federal all of the seller's rights in the Humiston contract, and guaranteeing that the purchaser would make all of the payments and fully perform the contract. The assignment provided also that the assignor would perform the contract if the purchaser failed to do so. Humiston was not a party to the assignment nor was there evidence that he had knowledge of this assignment to Federal Finance.

Captain Humiston commenced making the payments to Federal Finance. The china did not arrive. Humiston demanded both an explanation and return of his money from

Sparber. Sparber gave him the first, explaining that he had several big deals pending and had been compelled to divert delivery to other customers; as to return of the money, Sparber gave Humiston a check December 20, 1962, for $45.70 and another January 29, 1963, for $104.85, each of which was dishonored by the bank.

Humiston continued making the payments to Federal Finance despite failure of delivery. He says Sparber promised to reimburse him. In May and June, 1963, he received checks from Sparber in the amount of $52.75 each, both of which were dishonored by the bank. Each time Humiston chided Sparber, Sparber promised an early delivery, so, according to Humiston, the best way out of the fiasco was to make the payments in the hope of getting the china.

Robert L. Lobdell, a former manager of Federal Finance, testified that the company did not usually advance money to the seller on assigned contracts until they received a delivery and acceptance receipt, but could not explain in this instance Federal's failure to require such an instrument. He remembered that one time he had called the Humistons (November 20, 1962), to inquire about the tardiness of the November payment. Captain Humiston promised a payment by November 26th and the promise was kept; again, on January 2, 1963, he talked to Captain Humiston by telephone. In neither conversation did the purchaser protest nondelivery. Then, Lobdell remembered talking to Mrs. Humiston during late December, 1962, and asking her how she liked the china. He recalled her saying that they enjoyed it very much and used it a lot for entertaining. The trial court attached little significance to this reported conversation.

Humiston continued his payments to Federal Finance until September 30, 1963 (ten payments in all), relying, he says, on reimbursement by Sparber from time to time and on Sparber's promises that delivery would soon be made. When Humiston finally refused to make further payments, Federal Finance, as assignee of the conditional sales contract, brought this action for the principal bal-

ance of $749.06, for late charges of $5.28, and for an attorney's fee of $200. Humiston defends on the ground of total failure of consideration.

The plaintiff does not allege fraud, nor was there evidence of any. Federal Finance assigns error to the trial court's finding that there had been a total failure of consideration and no delivery or tender of the china. It argues that Humiston should be estopped in equity from asserting the nondelivery; that right to rescission for failure of delivery was lost through the making of payments for 10 or 11 months without protesting nondelivery. Plaintiff urges the familiar doctrine that, when one of two innocent parties must suffer, the one making the wrong or fraud possible should bear the loss.

█ The conditional sales contract recited delivery of the china, but the overwhelming evidence showed no delivery had been made by Sparber or anyone else. The buyer never received the goods. Although the written agreement between the vendor and vendee acknowledged delivery, parol evidence was admissible to prove no delivery had ever been made. *Mell v. Winslow*, 49 Wn.2d 738, 306 P.2d 751 (1957). A party to contract is not bound by a false recital of fact, and parol evidence is admissible to prove the recital erroneous. *Cook v. Vennigerholz*, 44 Wn.2d 612, 269 P.2d 824 (1954). Failure to deliver the subject matter of a contract to purchase merchandise represents a total failure of consideration—unless, of course, the contract provides otherwise. Captain Humiston, not having received the china, had a right to rescind his contract with Sparber and then and there terminate his liability under the contract. The Restatement confirms this view:

A total failure to receive the agreed exchange for the performance of a promisor's contractual duty discharges that duty; but if the failure is due to the promisor's fault he becomes subject to a duty to render compensation. Restatement, Contracts § 399(1) (1932).

█ Federal Finance, as Sparber's assignee—at no time undertaking to carry out his promise to deliver the china—

took the contract subject to any defenses the purchaser had against the seller. *Association Collectors, Inc. v. Hardman,* 2 Wn.2d 414, 98 P.2d 318 (1940).

(1) An assignee's right against the obligor is subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and to all set-offs and counterclaims of the obligor which would have been available against the obligee had there been no assignment, provided that such defenses and set-offs are based on facts existing at the time of the assignment, or are based on facts arising thereafter prior to knowledge of the assignment by the obligor.

(2) Except as stated in Subsection (3), an assignee's right against the obligor is subject to all set-offs and counterclaims which would have been available against the assignee if he were the original obligee.

(3) A sub-assignee's right against the obligor is not subject to the set-off or counterclaim of a right of the obligor against a prior assignee unless the obligor's right was acquired prior to any sub-assignment by the prior assignee, nor even in that case if a sub-assignee claiming under such prior assignee is a bona fide purchaser for value of the assigned right, without notice of the existence of the obligor's right. Restatement, Contracts § 167 (1932).

The assignee of a nonnegotiable instrument acquires no greater rights against the obligor than the assignor had against him at the time of the assignment unless, of course, an equitable estoppel may be interposed to prevent the obligor from setting up such defenses. *Nelson v. Bailey,* 54 Wn.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400 (1959). One of the essentials to such an estoppel is that the assignee has acted to his detriment because of the actions of the obligor. Other than accepting the payments it would not otherwise have received, the record shows no steps that Federal Finance would or could have taken to recover against Sparber had the payments been earlier discontinued.

Nor does the record disclose that Humiston, in continuing to forward the payments to Federal Finance, induced the latter to shift ground or take any steps detrimental to its position. Federal Finance did not show that had it

earlier learned of nondelivery it would have recovered from Sparber the money it advanced him in purchasing the assignment. Thus, there seems no room for the operation of the equitable principles urged by Federal Finance.

We have said in *Dean v. National Bank of Washington,* 57 Wn.2d 822, 360 P.2d 150 (1961), in quoting from *Witzel v. Tena,* 48 Wn.2d 628, 295 P.2d 1115 (1956):

"The doctrine of equitable estoppel or estoppel *in pais* is applied where justice forbids that one speak the truth in his own behalf. . . . For the doctrine to be applicable, there must be (1) acts, statements, or admissions inconsistent with a claim subsequently asserted, (2) action or change of position on the part of the other party in reliance upon such acts, statements, or admissions, and (3) a resulting injustice to such other party, if the first party is allowed to contradict or repudiate his former acts, statements, or admissions."

The judgment is affirmed.

ROSELLINI, C. J., OTT and HUNTER, JJ., and BRADFORD, J. Pro Tem., concur.