[No. 39680.     Department Two.     January 30, 1969.]

WILLIAM LAWRENCE BLACK, JR., *Appellants*, v. EVERGREEN LAND DEVELOPERS, INC., *et al.*, *Respondents*.*

*Reported in 450 P.2d 470.

*J. Lael Simmons,* for appellants.

*Rauscher, O'Connor & Kiefer,* for respondents.

HUNTER, C. J.—This is an appeal from the dismissal of the plaintiffs' suit in equity for a mandatory injunction. The question presented by this appeal concerns itself with the enforceability of an admitted oral representation by a land developer to a buyer when the rights of third parties become involved.

This dispute involves two plots of land located on a hillside real estate development called "Somerset" situated to the east of Lake Washington. The plaintiffs, William L. Black, Jr., and his wife, Jo Ann L. Black, since deceased, purchased a home on lot 72 in Somerset Division No. 3 on December 11, 1962. Pursuant to an earnest money agreement with the defendant builder, Albert L. Teil, the property was sold, subject to building and use restrictions of record, for $51,250. The real estate broker for the transaction was the defendant John W. Davis & Company, which acted through the defendant Frank M. Past.

During the year 1964, lot 38 of Somerset Division No. 3, which lies downhill and to the west or in front of the Black house, toward the east channel of Lake Washington, was sold to the defendants Avann. Sale and improvements of the property took the form of a "package deal" in which the defendants Swanson and Dean were to construct a house for the Avanns.

The plaintiffs claim that they were induced to purchase their property by the oral guarantees of the defendant Past as well as a statement in a promotional brochure to the effect that their "priceless view will [would] never be im-

paired." Such representations are admitted by Past, who at the time was employed as a salesman for the defendant John W. Davis & Company. Subsequently, Past terminated his employment with John W. Davis & Company and became employed as assistant project manager for the defendant Evergreen Land Developers, Inc., at the time the plaintiffs signed the earnest money receipt and the deed.

The earnest money agreement, signed by the parties, was in fine print and concluded with the provision: "There are no verbal or other agreements which modify or affect this agreement."

The deed, signed by the parties on January 11, 1963, contains the simple clause that the identified property is "Subject to rights, restrictions, easements and covenants of record, if any."

The recorded restrictive covenant of Division No. 3 of Somerset provides for the approval of all plans by the building committee. There is also a proviso that "No home will exceed more than one story above ground level when it will unduly interfere with another lot's view."

The oral representations as to nonimpairment of the Blacks' view were not written into the contract of sale. However, evidence of the plaintiffs' concern about their view and countering reassurances by the defendants runs throughout the trial record. During direct examination by defense counsel, defendant Past testified:

Q. . . . Did you at any time indicate to Dr. Black in anyway that a structure on the Avann lot built to a height of three feet above the carport floor would not obstruct any portion of his view? A. I missed a couple of "nots" in there. Q. I'm sorry. Did you state to Dr. Black that when a house was built upon the Avann lot that Dr. Black's view would be precisely the same as it was while the Avann lot was vacant? A. Did I say to Dr. Black that when a house was constructed on the Avann lot that Dr. Black's view would be the same as it was before the house was there? Q. Yes. A. Was that the question? Q. That is the question. A. I very probably made a statement to that effect.

Later, during the direct examination, Past testified of telling a builder:

A. . . . [W]e had told the builder that that house would not be able to be built there unless Dr. Black agreed because we had made a commitment to him previous to this.

During cross-examination by plaintiffs' counsel, defendant Past was asked whether he had told the Blacks that they would always have an unobstructed view of Lake Washington. He replied:

A. Unobstructed view of Lake Washington? Q. Yes. A. Yes, I would say that I probably made that statement.

Plaintiff Black testified that throughout construction of the Avann house he often approached Past concerning the view and that the latter constantly reassured him that his view of the channel would not be impaired, and on at least one occasion used the words: "I guarantee you that you will have your view of the east shore of the east channel."

Many references were made in the record to the fact that Past informed Black that the Avann house would be built to a maximum of 3 feet above the carport floor of the Gustaveson home which adjoins the Avann lot from the south. It further appears that on February 4, 1964, the Somerset, Architectural Control Committee sent a letter signed by Past (exhibit 13) to Mr. and Mrs. Dale Rumpf, the neighbors directly to the south of the Blacks, which stated the roof would be lower than 3 feet: "[Y]ou can be assured that the roof of the home on Lot 38 will be no higher than 1 foot above the carport floor of the house directly south of Lot 38." It was also often brought out that the defendants used a crossbar on occasions to show the Blacks how high the structure would go and on one such occasion, a hole was dug into the ground in order to lower the crossbar to the height at which the Blacks, both husband and wife, agreed to the effect that "that is fine." However, the point at which the crossbar was raised was approximately 20 feet from the road which borders the property line, or at best, the spot was picked at happenstance. The house was actually constructed so that the ridge

of the house, which ran north and south, was located 77 feet from the property line at the southern end of the house and 54.11 feet at the northern end, and maintained a height of 3 feet 6 inches above the level of the Gustaveson carport floor.

The plaintiffs contended at the trial that at no time did they ever consent to any serious impairment of their view of the east channel. The defendants countered this contention by showing that the plaintiffs had agreed to a height of 4 feet as indicated by the crossbar, and contended that they took due precaution in good faith to insure that the Blacks' view was not unduly infringed upon. To this effect the defendants exhibited a letter sent to the Somerset Architectural Control Committee which was dated July 12, 1964, and was signed by Dr. Black (exhibit 23). The concluding sentence of that letter reads as follows:

Further, Mrs. Black and I wish to extend our appreciation to Mr. Past and Mr. Dean for their genuine concern in this matter, and feel certain that any unforseen problem in this area can, and will, be promptly corrected by them.

Other portions of that letter, however, when read in its entirety, clearly show that no consent was given by the Blacks allowing the obstruction of their view of the east channel:

A cross bar was subsequently held by Mr. Past at a point now obliterated, the top of the parallel bar representing the distance 23 feet. In visual sighting by Mrs. Black from a point in the living room of our home at 4530 138th. Ave S.E., immediately in back of the center of the large South window, it was determined that this proposed heighth would eliminate completely the view of the East Channel of Lake Washington. Therefore, *we requested that the house be lowered until a view of this body of water from the east shore westerly could be had.* Mr. Past agreed that this was a reasonable request, and the cross bar was lowered until this view was obtainable. Messrs. Past and Dean stated that a drop of six (6) inches in overall heighth would permit this view, hence the figure 22 feet 8 inches.

It is emphasized that the figure 22 feet 8 inches represents the point at which Mr. Past and Mr. Dean *state that*

*our view will not be seriously impaired, and must not in any way be construed as .a final acceptance of an agreed elevation regardless of its damage to our view.* It is further emphasized that in the event the calculation by these gentlemen is in error, *and this elevation does result in obliterating our view,* and thus reducing property value, we will expect that the roof line of the home under construction be modified sufficiently to correct same. (Italics ours.)

The house, when completed at the height of 3 feet 6 inches above the floor of the Gustaveson carport, was a total of 22 feet 6 inches above the base elevation point, and substantially obliterated the covenanted view of the east channel of Lake Washington. The Blacks, however, immediately objected to the construction when the framing of the roof disclosed that their view would be impaired, and legal action was commenced.

During the course of the trial, the plaintiffs introduced uncontradicted evidence establishing that 71.61 per cent of their view of the east channel of Lake Washington lying southward of the east channel bridge has been taken by erection of the Avann house; and that 59 per cent of their entire view of the east channel—that is from the north end of Mercer Island south—has been thus removed by the erection of the Avann house to its present height. Judge Moriarity, who had viewed the premises, said:

It is apparent, I think from the view, that there is some impairment of view of the channel from the premises of Dr. Black at the present time, and principally because of the roof that intervenes between his home and the channel view. I think we are all in agreement that some of it is not available to vision as it would be if Mr. Avann's house were not there.

Following the trial, and prior to the entry of any findings of fact or judgment, Judge Moriarity died. By stipulation of the parties, a transcript of the record was thereupon provided and submitted to Judge Revelle, as the new trial judge. No further evidence was adduced. The trial judge was of the opinion that the defendants took necessary and due precaution in good faith to insure that the Blacks' view

was not unduly infringed upon; he therefore signed findings of fact and conclusions of law, together with a decree in favor of the defendants, on March 7, 1967. The present appeal follows that decision.

The plaintiffs contend that the trial court erred in making finding of fact No. 15, which reads as follows:

> Although there is some impairment to the view from the plaintiffs' house on Lot 72 resulting from the construction of the Avann house on Lot 38 of Somerset Division No. 3, such impairment does not in any respect unduly interfere with or unduly obstruct the view from the plaintiffs' home on Lot 72. The plaintiffs have retained a sweeping panoramic view of Lake Washington, the Olympic Mountains, Seattle and Mercer Island, which substantially conforms to the view depicted on the front cover of the Somerset brochure which is Exhibit 17 herein.

We agree with the trial court that the plaintiffs still retain a sweeping panoramic view of their surroundings, but that view is not totally germane to this lawsuit. This action was initiated because the defendants had orally made a covenant with the plaintiffs prior to the transfer of the deed in January, 1963, to protect the latters' view of the east channel from its eastern shoreline westward. The existence of said covenant is borne out both by the admissions and by the actions of the defendants—in fact, the very purpose of using the crossbar was to demonstrate to the Blacks that point above which they could still view the east channel of Lake Washington.

■ We therefore hold that, in reference to the covenanted view of the east channel, the trial court was in error. The plaintiffs, by uncontradicted evidence, have shown that over 71 per cent of their view of that portion of the east channel, or 59 per cent of their entire view of the east channel was obliterated. The findings that that view was not unduly impaired are not amply sustained by the proofs. See *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

In a second assignment of error the plaintiffs contend that the trial court erred in its findings of fact and conclu-

·sions of law that all statements, written and oral, made by or on behalf of any of the defendants to the plaintiffs with respect to the view from lot 72 and the structure which might be erected on lot 38, prior to January 11, 1963, were merged in the earnest money agreement or the deed.

It has long been the general rule of the law in this state that the provisions of a contract for the sale of real estate, and all prior negotiations and agreements, are considered merged in a deed made in full execution of the contract of sale. *Davis v. Lee,* 52 Wash. 330, 100 Pac. 752 (1909); *Peoples Nat'l Bank v. National Bank of Commerce of Seattle,* 69 Wn.2d 682, 420 P.2d 208 (1966). However, this rule is not ironclad and in the past this court has found grounds for exceptions. See, *Becker v. Lagerquist Bros., Inc.,* 55 Wn.2d 425, 348 P.2d 423 (1960); *Cf. Shelton v. Fowler,* 69 Wn.2d 85, 94-96, 417 P.2d 350 (1966); *Gronlund v. Andersson,* 38 Wn.2d 60, 227 P.2d 741 (1951). After stating the general rule, in *Snyder v. Roberts,* 45 Wn.2d 865, 872-73, 278 P.2d 348, 52 A.L.R.2d 631 (1955), we made reference to these exceptions:

Intrigued by the problem presented, we have made an extensive, intensive, and, we must confess, frustrating exploration of the authorities, to discover some way (on solid ground) around what Kent, C.J., in *Howes v. Barker,* 3 Johnson (N.Y.) 506, 3 Am. Dec. 526 (1808), called "the impediment of the deed," which he was unable to "surmount."

There are many exceptions to the doctrine of merger, but for the most part they are applied in cases where either the grantor or the grantee is attempting to enforce against the other, stipulations in the contract which are not contained in, not performed by, and not inconsistent with the deed and which are held to be collateral to or independent of the obligation to convey. The following, from *Morris v. Whitcher,* 20 N.Y. 41, 47 (1859), is widely quoted:

"In all cases then, where there are stipulations in a preliminary contract for the sale of land, of which the conveyance itself is not a performance, the true question must be whether the parties have intentionally surrendered those stipulations. The evidence of that intention may exist in or out of the deed. *If plainly expressed in*

*the very terms of the deed, the evidence will be decisive.* If not so expressed, the question is open to other evidence, and I think in the absence of all proof there is no presumption that either party, in giving or accepting a conveyance, intends to give up the benefit of covenants of which the conveyance is not a performance or satisfaction." (Italics ours.) (Quoted by this court in *Davis v. Lee* [52 Wash. 330, 100 Pac. 752 (1909)], *supra.*)

As stated in the facts, the warranty deed of lot 72 sold by the defendants to the plaintiffs contains only the simple clause, "Subject to rights, restrictions, easements and covenants of record, if any." We do not find that the oral covenant not to impair the view of the east channel is inconsistent with the deed; nor do we find that there was any intention on the part of either party to surrender this covenant by merger—the evidence is entirely to the contrary. Both the admissions and the actions of the defendants demonstrate that the oral covenant did in fact exist, was an inducement to enter the contract, and was foremost in the minds of all the parties subsequent to the execution of the deed of conveyance.

Under such circumstances the doctrine of "partial integration" would apply. That doctrine recognizes the right of contracting parties to reduce some provisions of their contract to written form and to leave others unwritten, trusting the latter to oral expression only. The provisions not in writing may be proved by parol insofar as they are not inconsistent with the written portion. *Barber v. Rochester,* 52 Wn.2d 691, 328 P.2d 711 (1958); *Buyken v. Ertner,* 33 Wn.2d 334, 205 P.2d 628 (1949); 3 Corbin, Contracts § 581 (1960).

Here the entire exchange of letters and negotiations, subsequent to the execution of the deed, was based upon the existence of the oral covenant and representation in the brochure that the plaintiffs' view would not be impaired. Throughout the construction of the Avann house the defendant Past repeatedly promised the Blacks that their view of the east channel would not be impaired; and the defendants affirmatively demonstrated the existence of this

oral covenant on several occasions by using a crossbar to show the plaintiffs how high the Avann roof could be without impairing their view of the east channel. There is no evidence in the record to show it was the intention on the part of either party that the oral covenant be merged into either the deed or the earnest money agreement. Rather, the asserted merger in the pleadings of the defendants appears clearly to be an afterthought relied upon by the defendants after suit was taken against them.

However, while the evidence of this case does not conflict with the provisions of the deed, it does conflict with the standardized fine print which concludes the earnest money agreement by stating: "There are no verbal or other agreements which modify or affect this agreement." The same situation existed in the case of *Rinaudo v. Bloom*, 209 Md. 1, 9, 120 A.2d 184 (1956) (cited in *Barber v. Rochester, supra*), where that court stated:

> We are met at once by the integration clause of the agreement which states in part that "This Contract contains the final and entire Agreement between the parties." As Professor Corbin points out in an article on the *Parol Evidence Rule*, in 53 Yale Law Journal 603, at page 621, even such a clause itself may embody a recital of fact which may be untrue. Doubtless, however, such a clause strengthens, and it may go beyond, the presumption of integration upon which the parol evidence rule proceeds; but it is not invariably conclusive and its coverage is a matter of interpretation.

We find, in view of the overwhelming evidence of this case, it is obvious that the above statement of the earnest money agreement is false and therefore we will not adhere to it. *Rinaudo v. Bloom, supra.* Under the law of this jurisdiction "a party to a contract is not bound by a false recital of fact, and parol evidence is admissible to show the true state of affairs." *Cook v. Vennigerholz*, 44 Wn.2d 612, 616-17, 269 P.2d 824 (1954); see also, *Federal Fin. Co. v. Humiston*, 66 Wn.2d 648, 651, 404 P.2d 465 (1965). Moreover, the recent trend of the courts has been to discredit fine print clauses when to enforce them would be against public policy. See, *Henningsen v. Bloomfield Motors, Inc.*,

32 N.J. 358, 161 A.2d 69 (1960); see also, *Norway v. Root*, 58 Wn.2d 96, 361 P.2d 162 (1961); *Udell v. Rohm & Haas Co.,* 64 Wn.2d 441, 392 P.2d 225 (1964); Kessler, *Contracts of Adhesion-Some Thoughts about Freedom of Contract,* 43 Colum. L. Rev. 629 (1943). In *Henningsen,* 32 N.J. at 403-404, the court stated:

> Courts keep in mind the principle that the best interests of society demand that persons should not be unnecessarily restricted in their freedom to contract. But they do not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of the public in some way. *Hodnick v. Fidelity Trust Co.,* 96 *Ind. App.* 342, 183 *N.E.* 488 (*App. Ct.* 1932).

To now hold that the "boilerplate" at the conclusion of the earnest money agreement would vitiate the manifest understanding of the parties as evidenced by this record would amount to a constructive fraud practiced by the defendants upon the plaintiffs. See, *Thompson v. Huston,* 17 Wn.2d 457, 135 P.2d 834 (1943); *Lou v. Bethany Lutheran Church,* 168 Wash. 595, 13 P.2d 20 (1932); *Starwich v. Ernst,* 100 Wash. 198, 170 Pac. 584 (1918). We therefore hold that the sentence in the earnest money agreement denying the existence of any other agreements is not controlling. There was not a total integration of the contract within the earnest money agreement despite said language, for the parties very definitely did negotiate and agree to preserve the Blacks' view of the east channel. This covenant, though not recorded, is not contrary or inconsistent with the deed and, therefore, did not merge with the conveyance of the deed; rather, it has been shown to be an integral part of the purchase contract and is enforceable under the doctrine of partial integration.

Finally, the plaintiffs contend that the trial court erroneously entered conclusions of law Nos. 3 and 4, that the defendants acted reasonably in relying upon the consent of the Blacks to build the Avann house on lot 38 to a height not to exceed 4 feet above the carport floor on the adjacent lot 39. We are in agreement with the plaintiffs. As heretofore stated, the record does not support these conclusions.

When the Blacks consented to a height as represented by the crude crossbar appraisals of the defendants, it was clearly conditioned upon the understanding, as evidenced by their letter to the defendants (exhibit 23, *supra*), that they would never agree to any height which would seriously impair their view of the east channel.

As to the defendants Avann, we affirm the trial court's order dismissing them from the action. The Avanns were not in privity with the oral covenant not to impair the Blacks' view. They were bona fide purchasers of lot 38 and took title to that property subject only to restrictions of record, and we find the evidence insufficient to overturn the trial court's finding that these restrictions were not violated.

This being an equity case in which the plaintiffs have sought such further or different relief as might be just, we deem the pleadings amended to conform with the proof. We reverse the dismissal as to all defendants other than the Avanns and remand this case for further proceedings on the issue of damages. The trial court's denial of the application for writ of mandamus is affirmed.

The plaintiffs, having substantially prevailed, will be allowed their costs on this appeal.

HILL, HAMILTON, and NEILL, JJ., and OTT, J. Pro Tem., concur.