[No. 11173-6-I. Division One. August 26, 1985.]

LINN EMRICH, ET AL, *Respondents,* v. C. RICHARD
CONNELL, ET AL, *Appellants.*

*Hillis, Phillips, Cairncross, Clark & Martin* and *George Kresovich*, for appellants.

*Smith, Brucker, Winn & Ehlert* and *Thomas H. S. Brucker*, for respondents.

SCHOLFIELD, A.C.J.—The general partners, C. Richard Connell and George E. Toles, and the limited partners of Issaquah Farms Unlimited (Issaquah Farms) appeal a judgment ordering them to specifically perform an agreement with Linn and Marian Emrich (Emrich) regarding the real property known as the Issaquah Skyport Airfield. We affirm.

## FACTS

Emrich leased the Issaquah Skyport Airfield from former owners, the Pickering brothers, until it was sold to Michael Myers in 1975. Myers conveyed the airport property to Issaquah Farms. Myers remained involved with the property, however, and near the expiration of Emrich's lease in late 1977, he directed Cary Garman, an accountant with the Myers Company, to negotiate a new lease with Emrich.

After extensive negotiations, Emrich and Garman produced a written lease providing a 5-year lease term with 1-year optional extensions, rental and other typical lease provisions, and a cancellation clause, which provided:

> 19. CANCELLATION: Any time after the 15th day of March, 1978, Lessee agrees to vacate and surrender the demised premises within one hundred twenty (120) days following written notice from Lessor that this Lease Agreement is cancelled. Lessor agrees not to cancel this Lease for the purpose of leasing the premises to another party for a use similar to or the same as the use described in Paragraph 7, "Use of Premises".

Exhibit 6.

The lease did not contain an integration clause providing

that the lease was complete and contained all agreements of the parties on the subject matter involved. The controversy in this case arises from the claim by Emrich of an alleged oral agreement made with Emrich by Garman, acting on behalf of Issaquah Farms, that the cancellation clause would not be exercised until the property was ready to be developed. Emrich also claims, and the trial court found, that Connell and Toles ratified the oral agreement by executing the lease at a time when they had knowledge of the oral agreement prohibiting exercise of the cancellation clause until the property was ready to be developed.

On December 3, 1979, the Issaquah City Council imposed a temporary building moratorium on land in Issaquah, including the airport property. With the moratorium in effect, the property could not be rezoned from its current residential zoning (RS–9600). Use as an airport was allowed as a preexisting use. On December 11, 1979, Issaquah Farms sent a notice of cancellation to Emrich. Shortly thereafter, Emrich commenced this action seeking an injunction against cancellation of the lease and a decree of specific performance of the lease as orally modified.

The trial court entered extensive findings of fact, including the following:

10. . . . Lease negotiations were undertaken by Cary Garman as the agent of the defendants.

. . .

12. The Lease is not a totally integrated document reflecting the total intentions of the parties. No party intended that paragraph 19 of the Lease would represent the total agreement between the parties regarding cancellation.

13. An addendum was orally and contemporaneously added to the written provisions of the Lease ("the oral addendum"), providing that the lessor would not terminate the Lease until the Property was ready to be developed, thus creating a condition precedent to the lessor's exercise of the right of cancellation under paragraph 19 of the Lease.

14. The terms of the Lease, including the oral addendum, were explained by Cary Garman to C. Richard

Connell and George E. Toles before they executed the Lease. By their execution of the Lease, C. Richard Connell and George E. Toles ratified the oral addendum.

. . .

28. The Property is not ready to be developed.

The trial court made and entered conclusions of law that parol evidence was admissible to prove the oral agreement; that the defendants were estopped, under the doctrine of equitable estoppel, from exercising their right of cancellation until the property was ready to be developed; and that plaintiffs were entitled to a decree of specific performance, which prevented the defendants from exercising the right of cancellation of the lease until the property was ready to be developed. The trial court also awarded judgment in favor of Emrich and against the defendants for substantial attorney's fees and costs.

The lease provided for attorney's fees as follows:

20. ATTORNEY'S FEES: If, by reason of any default on the part of either party in the performance of any of the provisions of this Lease, it becomes necessary for the other party to employ an attorney, the defaulting party agrees to pay all costs, expenses and a reasonable attorney's fee.

Exhibit 6.

PAROL EVIDENCE RULE

Issaquah Farms contends the trial court erred in admitting and considering parol evidence of the alleged oral addendum to the written lease.

■ When a party to a written agreement alleges the existence of an oral agreement that materially supplements, affects, or modifies one or more provisions of the written agreement, the trial court must admit evidence relevant to that claim in order to determine the intentions of the parties. If the trial court ultimately finds the parties intended the written agreement to incorporate their entire agreement, then the parol evidence is disregarded. The court can consider the parol evidence of an oral agreement if the court finds the parties intended to make an agreement

partly oral and partly in writing. *Ban–Co Inv. Co. v. Loveless,* 22 Wn. App. 122, 129–30, 587 P.2d 567 (1978); *Morgan v. Stokely–Van Camp, Inc.,* 34 Wn. App. 801, 808, 663 P.2d 1384 (1983); 5A K. Tegland, Wash. Prac. § 524, at 412 (2d ed. 1982).

> People have the right to make their agreements partly oral and partly in writing, or entirely oral or entirely in writing; and it is the court's duty to ascertain from all relevant, extrinsic evidence, either oral or written, whether the entire agreement has been incorporated in the writing or not. That is a question of fact.

*Barber v. Rochester,* 52 Wn.2d 691, 698, 328 P.2d 711 (1958).

Issaquah Farms argues that the oral agreement cannot be allowed to stand because it contradicts the unambiguous provisions of the cancellation clause, citing *Black v. Evergreen Land Developers, Inc.,* 75 Wn.2d 241, 450 P.2d 470 (1969) and *Buyken v. Ertner,* 33 Wn.2d 334, 205 P.2d 628 (1949). These cases discuss and apply the doctrine of partial integration, which provides

> that where it appears that only a part of the contract is in writing, the part not in writing may be proved by parol, in so far as it is not inconsistent with the written portion.

*Buyken,* at 345.

Although numerous cases have repeated the assertion that an oral agreement will not be enforced to the extent it is inconsistent with a portion of a contemporaneous written agreement, our research discloses no Washington cases in which our Supreme Court has relied upon and enforced that statement as the dispositive point in the case. To the contrary, a number of Washington cases have declined to enforce this limitation on the extent to which oral agreements can be enforced.

In *Black v. Evergreen Land Developers, Inc., supra* at 243, the earnest money agreement contained this provision: "'There are no verbal or other agreements which modify or affect this agreement.'" The plaintiff sued to enforce a con-

temporaneous oral agreement, not mentioned in the earnest money agreement nor in the contract of sale, that the view from the purchaser's lot would never be impaired. In its opinion, the Supreme Court acknowledged that the oral agreement contradicted the language of the merger clause. In disposing of this conflict, the court stated at page 250 as follows:

> We find, in view of the overwhelming evidence of this case, it is obvious that the above statement of the earnest money agreement is false and therefore we will not adhere to it. . . . Under the law of this jurisdiction "a party to a contract is not bound by a false recital of fact, and parol evidence is admissible to show the true state of affairs." *Cook v. Vennigerholz,* 44 Wn.2d 612, 616–17, 269 P.2d 824 (1954); see also, *Federal Fin. Co. v. Humiston,* 66 Wn.2d 648, 651, 404 P.2d 465 (1965).

In *Morgan v. Stokely–Van Camp, Inc., supra,* Morgan entered into a written contract with Stokely whereby Stokely agreed to purchase 336 acres of peas being grown by Morgan. Stokely harvested only 301 acres of Morgan's peas, and Morgan brought suit for damages. The trial court accepted evidence that the parties had a different agreement with respect to one field than that expressed in the written contract. Morgan relied upon a merger clause, stating that "'[t]his constitutes the whole agreement between the parties hereto and no representation, oral or written, shall be binding upon either of the parties hereto unless contained herein.'" *Morgan,* at 806. The trial court had determined that contrary to the "merger clause", the written contract was not a final expression of the parties' agreement. The Court of Appeals approved the use of parol evidence to replace or supplement the terms of the written contract.

If the rule that an oral agreement conflicting with a provision in a contemporaneous written agreement will not be enforced is mechanically and rigidly applied, then some agreements entered into in good faith will not be enforced. This approach defeats the intent of the parties. The better rule is to enforce the intent of the parties as found by the

trial court upon substantial evidence. The "intent" approach is described in 5A K. Tegland, Wash. Prac. § 524, at 411 (2d ed. 1982) as follows:

> Under the "intent" approach, the court determines whether the contract is integrated by reference to the instrument itself and to other evidence, including the alleged oral agreements. In every case in which a proponent wishes to prove other terms—contradictory or not— the court should first hear the offered evidence and determine whether the written agreement was intended to be the final integration of all previous and contemporaneous dealings upon the subject matter. If so, the terms and agreements not embodied in the writing are to be disregarded. If not, then the writing may be supplemented or replaced by other terms or agreements which the evidence shows by a preponderance of evidence.

(Footnotes omitted.)

This appears to be the view taken in *Dix Steel Co. v. Miles Constr., Inc.*, 74 Wn.2d 114, 443 P.2d 532 (1968), in which the court said at page 119:

> Accordingly, although the preliminary negotiations and promises may, as a matter of fact, merge into and lose their separate identity in a formal written document generally, in some cases they do not do so. It all depends upon the parties' intentions, and these intentions, more often than not, are facts to be ascertained by the trial court or jury. The courts will uphold whatever lawful agreement the parties made with each other.

*See also* 3 A. Corbin, *Contracts* § 583 (1960).

We conclude the oral agreement that the cancellation clause would not be exercised until the property was ready to be developed is in conflict with the language of the cancellation clause, which gave the lessor the right to cancel the lease "[a]ny time after the 15th day of March, 1978". The trial court has found upon substantial evidence, however, that the lease was not an integrated agreement and the parties' intentions are partly expressed in the written lease and partly expressed in the oral agreement, which operates as a condition precedent to the lessor's right to invoke the cancellation clause. Under these circumstances,

the intentions of the parties should be enforced. The trial court did not err in admitting parol evidence nor in finding an enforceable oral agreement.

### Sufficiency of Evidence

Issaquah Farms next contends the finding of a contemporaneous oral agreement is not supported by substantial evidence. The argument made in support of this contention relates to the weight and probative value of the evidence relied upon by the trial court in finding there was an oral addendum and the parties did not intend the written lease to be an integrated writing fully incorporating their agreement.[1]

In discussions about the 120–day cancellation clause, Emrich advised Garman he did not want to sign what could amount to a lease for only 4 months. Garman testified he assured Emrich that was not the case and discussed with Emrich in some detail the steps that would have to be taken and the events that would have to occur before the property would be ready for development to a higher use. Garman testified that he told Connell of these discussions with Emrich and of Emrich's concern about the cancellation clause. In these discussions, the exercise of the cancellation clause was related directly to development of the property. After the lease was signed, Connell wrote a letter to Emrich dated April 19, 1979, saying that preliminary planning, market analysis and engineering was being done in respect to the leased premises and saying also, "In any case we will keep you informed as to any developments that would affect your lease on the airfield." Exhibit 8.

Patricia Wrenn, a newspaper reporter, testified through her deposition commenced on March 20, 1980, and com-

---

[1]Issaquah Farms cites *Golden v. Mount,* 32 Wn.2d 653, 203 P.2d 667 (1949), a case in which the lessee claimed an oral agreement by the lessor to a 3–year term on a lease providing only a 1–year term. *Golden* is readily distinguishable because in it the trial court made a purely factual finding that the evidence was insufficient to establish plaintiff's claim of an oral agreement for a 3–year term. In the case before us, the trial court found the evidence *sufficient* to establish the oral agreement.

pleted April 17, 1980. She was questioned about an article she wrote for the Daily Journal American in January 1980. She testified that in preparing the article, she had a telephone conversation with Connell in which she asked him if he had made an oral agreement with Emrich that would allow Emrich to stay on the property until it was ready to be developed. She testified Connell's response was, "'It was strictly a verbal thing.'"

Emrich testified to various conversations with Garman that amounted to a commitment from Garman that Emrich could operate the airport on the property until it was ready for development into a higher use. Emrich testified he relied on that commitment when he signed the lease and also when, after the lease was signed, he made extensive purchases of gasoline and other equipment and repairs of airport facilities.

■ The testimony of Emrich, Garman and Wrenn, considered in light of all the evidence, provides substantial evidence supporting the challenged findings. Findings supported by substantial evidence are verities on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). The claim that the finding of a contemporaneous oral agreement is not supported by substantial evidence is rejected.

## GARMAN'S AUTHORITY TO ACT

Issaquah Farms also assigns error to the finding that Garman acted as an agent of the limited partnership in his negotiations with Emrich.

■ An agency relationship results from consent by both the principal and the agent that the agent will act on the principal's behalf and subject to his control. *Moss v. Vadman*, 77 Wn.2d 396, 402–03, 463 P.2d 159 (1969). We agree that the evidence is devoid of proof that Garman was expressly granted authority to act on Issaquah Farms' behalf. However, authority to act for another can be implied from conduct of the principal and proof of actions taken with the principal's knowledge that would allow a

person of ordinary prudence to reasonably assume that a person had that authority. *Walker v. Pacific Mobile Homes, Inc.,* 68 Wn.2d 347, 413 P.2d 3 (1966); Restatement (Second) of Agency § 27 (1958).

The evidence here shows Garman conducted lease negotiations with Emrich with the knowledge and apparent approval of the general partners of Issaquah Farms. The general partners did not stop Garman nor advise Emrich that Garman had no authority to act for them. Garman was directed by Myers to negotiate the lease with Emrich, and Emrich knew that Myers had previously negotiated a lease on the same property with another person on the mistaken belief that Emrich's lease had expired. Emrich also knew that he had negotiated on this lease with Myers, believing he had authority to act for Issaquah Farms, prior to Myers' referring Emrich to Garman for continued negotiations. There was evidence Emrich relied upon Garman's representations that the cancellation clause would not be exercised until the property was ready to be developed. It is implicit in the trial court's finding that Garman had apparent authority to act for Issaquah Farms that the trial court concluded that Emrich's reliance upon Garman was reasonable under the circumstances.

Weighing the evidence and drawing reasonable inferences therefrom is the function of the trial court. The finding of agency is supported by substantial evidence.

■ As the trial judge observed in his oral opinion, however, the issue of agency is not of critical importance in this case. Agency is critical when a party relies upon the doctrine of respondeat superior, holding the principal liable for the acts of his agent. Here, the general partners of Issaquah Farms personally ratified and approved Garman's representations to Emrich of an oral addendum when they executed the lease with knowledge of the oral agreement. *National Bank of Commerce v. Thomsen,* 80 Wn.2d 406, 413, 495 P.2d 332 (1972); Restatement (Second) of Agency § 82 (1958). The trial court made a finding to this effect, which we conclude is supported by substantial evidence.

Drawing the inferences to support ratification is a function of the fact finder. *Nichols Hills Bank v. McCool,* 104 Wn.2d 78, 701 P.2d 1114 (1985). The trial court did not err in concluding that the oral addendum was binding on Issaquah Farms.

## EQUITABLE ESTOPPEL

Issaquah Farms also assigns error to the trial court's finding that it is equitably estopped from exercising the cancellation clause before the property is ready to be developed. It argues that the actions taken by Emrich were merely preparation for the 1980 flying season and therefore cannot support estopping Issaquah Farms from exercising the cancellation clause before the property is ready to be developed.

Equitable estoppel is based upon the principle that a person should not be permitted to deny what he or she has once solemnly acknowledged, and is defined as requiring three elements: (1) an admission, statement or act inconsistent with the claim afterward asserted; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act. *Arnold v. Melani,* 75 Wn.2d 143, 147, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968).

In making its finding of equitable estoppel, the trial court relied upon evidence of correspondence from Connell to Emrich, subsequent to the signing of the lease, in which Connell gave reassurances to Emrich consistent with the oral addendum that progress toward development of the property would be time consuming and that he would have ample warning when they approached a time when the property would be ready for development. There is substantial evidence that Emrich, in response to those assurances, purchased an airplane for towing gliders, purchased mowing equipment, renovated buildings on the property, and performed building repairs which involved expenditure of substantial sums of money and went beyond routine

maintenance. These actions went beyond mere preparation for the 1980 flying season. The trial judge in his oral opinion outlined the requirements of equitable estoppel and concluded that the doctrine was applicable in this case. The elements of equitable estoppel present essentially factual issues. We find substantial evidence in the record to support the trial court's finding of equitable estoppel. This assignment of error must be rejected.

## SPECIFIC PERFORMANCE

The trial court enjoined Issaquah Farms from canceling the lease until the property is "ready to be developed." Issaquah Farms contends this language is capable of several different interpretations, each of which would indicate a different point in time when the cancellation clause could be involved. Issaquah Farms relies upon cases supporting the general rule that courts will not compel specific performance of agreements where the contract language is unclear and does not adequately describe the act to be performed. The cases relied upon by Issaquah Farms involved the sale of a radio station (*KVI, Inc. v. Doernbecher,* 24 Wn.2d 943, 167 P.2d 1002 (1946)), an oral contract to convey real estate (*McLean v. Archer,* 32 Wn.2d 234, 201 P.2d 184 (1948)), and an earnest money agreement calling for a lease (*Keys v. Klitten,* 21 Wn.2d 504, 151 P.2d 989 (1944)). In each of these cases, the agreement was not sufficiently complete that the court could know what contract it was being called upon to specifically enforce. In each of these cases, the court recognized it could not fill in the missing details without writing for the parties a contract they did not make for themselves.

The problem here is somewhat different. The court here has only to give a reasonable interpretation to language agreed upon by the parties. In the light of all the circumstances of this case, "ready to be developed" can be interpreted reasonably as meaning when the property has been zoned for a higher use than its present residential zoning. Such rezoning would place the property in a status

where the applicable zoning would allow further development. This is the interpretation discussed by the trial court in its oral opinion and is sufficient for the purposes of this case.

We agree with the trial court that while "ready for development" is somewhat vague, it has a reasonably ascertainable meaning in the context of the facts of this case sufficient to be specifically enforceable. By any interpretation, the property was not ready for development when the cancellation notice was sent to Emrich on December 11, 1979.

## ATTORNEY'S FEES

Issaquah Farms contends that the court erred in awarding attorney's fees because Emrich's action was one seeking performance of a separate oral agreement, rather than an action seeking performance of the written lease. It also contends that its termination of the lease does not constitute "default" in the performance of any of the provisions of the lease.

Issaquah Farms cites *Brine v. Bergstrom*, 4 Wn. App. 288, 289–90, 480 P.2d 783 (1971) and cases from foreign jurisdictions in support of this contention. The *Brine* case appears to hold that a provision in a lease providing for attorney's fees "[i]n the event legal action shall be brought upon this lease" could not be enforced where the lease was terminated prior to commencement of the legal action. *Brine,* at 289 n.1. *Brine* is readily distinguishable because, here, the lease remains in effect. Furthermore, the purpose of Emrich's action was to enjoin an attempted cancellation and to enforce his possessory rights under the lease.

Cases from other jurisdictions cited by Issaquah Farms support the argument that if the prevailing party relied primarily upon an oral agreement independent of the written agreement containing the attorney's fee provision, then attorney's fees are not recoverable. We find these cases unpersuasive here because Emrich was seeking enforcement

of his rights under the lease. His right to attorney's fees should not be denied because he relied upon a contemporaneous oral addendum to the written lease.

In *Suess v. Heale,* 68 Wn.2d 962, 963, 416 P.2d 458 (1966), plaintiff's declaration of a forfeiture of a real estate contract did not preclude recovery of attorney's fees, even though the attorney's fee provision did not expressly provide for award of attorney's fees in case of forfeiture, but did provide for attorney's fees in "any suit or action to enforce any covenant of [the] contract". The purpose of the suit was to gain possession of the property, and the court found an implied covenant to surrender possession following a valid declaration of forfeiture.

In *Turner v. Wexler,* 14 Wn. App. 143, 149, 538 P.2d 877 (1975), the attorney's fee provision was contained in a 1965 contract. In a 1969 contract, it was provided that the 1965 contract would remain in "'full force and effect except as modified herein.'" In an action brought under the 1969 agreement, the attorney's fee provision set forth only in the 1965 contract was enforced.

In *Herzog Aluminum, Inc. v. General Am. Window Corp.,* 39 Wn. App. 188, 692 P.2d 867 (1984), the contract sued upon contained a provision for award of attorney's fees. The defendant successfully defended against plaintiff's claim of a breach of contract by proving the absence of an enforceable contract. We held attorney's fees recoverable by the prevailing party because the action was one in which it was alleged that a person was liable on a contract which contained an attorney's fee provision.

We hold Emrich is entitled to recovery of reasonable attorney's fees because his action is essentially one to enforce his rights under a lease providing reasonable attorney's fees to the prevailing party. Nothing in our existing case law prohibits awarding of attorney's fees here, and had Issaquah Farms been the prevailing party, there appears to be no question it would have been entitled to attorney's fees. *See* RCW 4.84.330.

■ Default is broadly defined as any failure to perform

a promise or obligation. Unlawfully asserting the cancellation and right to possession of the property amounts to a "default" within the meaning of the provision for attorney's fees. The trial court did not err in awarding reasonable attorney's fees to Emrich.

Emrich also seeks award of attorney's fees on appeal. He has complied with RAP 18.1 and is hereby awarded attorney's fees on appeal in the amount of $5,250.

RINGOLD, J., and HOPP, J. Pro Tem., concur.

Review granted by Supreme Court November 8, 1985.