[No. 52070-4. En Banc. March 27, 1986.]

LINN EMRICH, ET AL, *Respondents,* v. C. RICHARD CONNELL, ET AL, *Petitioners.*

552

*Hillis, Cairncross, Clark & Martin, P.S.,* by *George A. Kresovich* and *Gary M. Fallon,* for petitioners.

*Smith, Brucker, Winn & Ehlert,* by *Thomas H. S. Brucker,* for respondents.

BRACHTENBACH, J.—Petitioners—the general partners, C. Richard Connell and George E. Toles, and various limited partners of Issaquah Farms Unlimited—are owners and lessors of real property situated in Issaquah, Washington. The lessees, respondents Linn and Marian Emrich, operate a recreational airport on this property. They brought an action seeking to prevent petitioners from exercising a right of termination expressly provided for in the written lease, claiming that petitioners had orally agreed not to terminate the lease until the property was "ready to be developed." The trial court admitted evidence of the oral agreement

and entered a decree entitling respondents to specific performance of this agreement. The Court of Appeals, Division One, affirmed. *Emrich v. Connell*, 41 Wn. App. 612, 705 P.2d 288 (1985). We reverse.

Respondents have operated a recreational airport on the Issaquah property since 1962 under a series of written lease agreements with the former owners. The respondents, whom the record reveals to have been experienced to some extent in real estate matters, personally negotiated these leases which contained cancellation clauses with various renewal options and first right of refusal provisions. The last of these leases was due to expire in March 1978.

In June 1975, petitioners purchased the Issaquah property subject to respondents' preexisting lease. The Myers Company, a real estate brokerage firm which negotiated the sale and retained an exclusive right to resell the property, apparently remained involved with the property to some extent.

In late 1977, a few months before respondents' lease was due to expire, Cary Garman, an accountant with the Myers Company, was directed to negotiate a new lease with respondents. Negotiations between respondents and Garman resulted in a written lease for a 5–year term (with 1–year options) commencing on March 15, 1978, for a minimum annual rent of $6,000 and a maximum rent of 15 percent of respondents' gross revenues from operation of the airport. The lease contained other typical lease provisions. Of particular importance in this controversy is the cancellation clause in paragraph 19 of the lease, which provides:

> Any time after the 15th day of March, 1978, Lessee agrees to vacate and surrender the demised premises within one hundred twenty (120) days following written notice from Lessor that this Lease Agreement is cancelled. Lessor agrees not to cancel this Lease for the purpose of leasing the premises to another party for a use similar to or the same as the use described in Paragraph 7, "Use of Premises".

Clerk's Papers, at 457–58.

The facts surrounding the negotiation of this clause are sharply disputed by the parties. In particular, the parties disagree as to the effect of Garman's assurances to respondents during the negotiations that they would not be signing a 4–month lease, that the petitioners intended to hold the property for development or sale, that governmental processes incident to any planned development of the property would take at least a year or more, and that respondents could remain on the property until it was ready to be developed. Respondents claim, and the trial court agreed, that the negotiations established an oral agreement that the lease cancellation clause would not be invoked until the property was ready to be developed. Petitioners deny that they orally agreed to anything not contained in the written lease.

In any event, the cancellation clause, as set forth above, became paragraph 19 of the written lease, which was signed by respondents on December 29, 1977, and by the general partners of Issaquah Farms, Connell and Toles, on January 3, 1978.

Approximately 13 months after the signing of the lease, petitioners began investigating other potential uses for the property, which was zoned residential. (The airport operation was allowed to remain as a preexisting use.) In the spring of 1979, petitioners applied for a rezone to permit an industrial park development on the property. On December 3, 1979, the Issaquah City Council imposed a temporary building moratorium on land in Issaquah, including the airport property. On December 11, 1979, petitioners sent a 4–month notice of cancellation to respondents pursuant to the lease cancellation clause in paragraph 19.

Respondents commenced this action in superior court on February 25, 1980, seeking a preliminary and permanent injunction against cancellation of the lease and specific performance of an alleged oral agreement between the parties that the lease would not be canceled until the property was ready to be developed. Following a nonjury trial, the trial court entered extensive findings of fact, including the

following:

12. The Lease is not a totally integrated document reflecting the total intentions of the parties. No party intended that paragraph 19 of the Lease would represent the total agreement between the parties regarding cancellation.

13. An addendum was orally and contemporaneously added to the written provisions of the Lease ("the oral addendum"), providing that the lessor would not terminate the Lease until the Property was ready to be developed, thus creating a condition precedent to the lessor's exercise of the right of cancellation under paragraph 19 of the Lease.

. . .

28. The Property is not ready to be developed.

Clerk's Papers, at 10, 13.

Based on these findings, the trial court held that: (1) parol evidence is admissible to prove the oral agreement that the lease will not be canceled until the property is ready to be developed; (2) respondents are entitled to a decree of specific performance of that agreement; and (3) petitioners are equitably estopped from exercising their right of cancellation under the written lease until the property is ready to be developed. Petitioners seek review of the Court of Appeals decision affirming the trial court. We reverse.

The initial issue raised by petitioners is whether parol evidence is admissible to prove an oral agreement which is inconsistent with the terms of a written lease. The Court of Appeals upheld the trial court's admission of extrinsic evidence of the oral agreement even though it concluded that the oral agreement is inconsistent with the cancellation clause in the written lease. Petitioners contend that the Court of Appeals misapplied the parol evidence rule. We agree.

The parol evidence rule, as traditionally stated in Washington, provides:

[P]arol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature and which are valid,

complete, unambiguous, and not affected by accident, fraud, or mistake.

*Buyken v. Ertner*, 33 Wn.2d 334, 341, 205 P.2d 628 (1949). It is not a rule of evidence but one of substantive law. *Barber v. Rochester*, 52 Wn.2d 691, 696, 328 P.2d 711 (1958). Thus, prior or contemporaneous negotiations and agreements are said to merge into the final, written contract, and any evidence of these, even if admitted without objection, is rendered incompetent and immaterial by operation of the rule. *Fleetham v. Schneekloth*, 52 Wn.2d 176, 179, 324 P.2d 429 (1958).

■ However, the parol evidence rule only applies to a writing intended by the parties as an "integration" of their agreement; *i.e.*, a writing intended as a final expression of the terms of the agreement. *See Heath Northwest, Inc. v. Peterson*, 67 Wn.2d 582, 584, 408 P.2d 896 (1965); *University Properties, Inc. v. Moss*, 63 Wn.2d 619, 621, 388 P.2d 543 (1964). *See also* Restatement (Second) of Contracts § 209(1), at 115 (1981); RCW 62A.2-202. In making this preliminary determination of whether the parties intended the written document to be an integration of their agreement, which is a question of fact, the trial court must hear all relevant, extrinsic evidence, oral or written. *Barber v. Rochester, supra* at 698. If, after hearing all the evidence, the court determines that the writing is the final and complete expression of the parties' agreement—*i.e., completely integrated*—then the extrinsic evidence is disregarded. *Becker v. Lagerquist Bros.*, 55 Wn.2d 425, 426, 348 P.2d 423 (1960). If, however, the court finds that the parties intended the writing to be a final expression of the terms it contains but not a complete expression of all terms agreed upon—*i.e., partially integrated*—then the terms not included in the writing may be proved by extrinsic evidence *only insofar as they are not inconsistent with the written terms.*[1] *Black v. Evergreen Land Developers, Inc.*, 75

---

[1]Of course, the writing may not be integrated at all—for example, a memorandum, not intended as a final expression of the parties' agreement. In such a case,

Wn.2d 241, 249, 450 P.2d 470 (1969); *University Proper-
ties, Inc. v. Moss, supra* at 621; *Buyken v. Ertner, supra* at
345.

With these principles in mind, we turn now to the facts
before us. The trial court found, after considering all
relevant, extrinsic evidence, that the written lease is not
completely integrated, the parties intending their total
agreement to be partly in writing and partly oral. Assuming
that this finding of partial integration is supported by sub-
stantial evidence, the only remaining question is whether
the oral agreement is inconsistent with any provisions of
the written lease. The trial court held that it was not.

However, we agree with the Court of Appeals that the
oral agreement is in conflict with the cancellation clause in
paragraph 19 of the lease. Paragraph 19 gives the lessor the
right to cancel the lease "[a]ny time after the 15th day of
March, 1978" with 4 months' notice. This unconditional
right of cancellation is limited only by the second sentence
of paragraph 19, a sentence added at respondents' request,
which prevents the lessors from canceling the lease for the
purpose of leasing the property to another for use as an
airport. An oral agreement that the lease will not be can-
celed until the property is ready to be developed would
substantially limit, and is clearly inconsistent with, the les-
sor's right of cancellation as expressed in paragraph 19 of
the written lease. Thus, even if the lease is only partially
integrated, the trial court erred in admitting evidence of an
inconsistent oral agreement.

The Court of Appeals recognized the conflict between the
oral and written agreements but, nonetheless, upheld the
trial court's admission of parol evidence, relying upon
*Black v. Evergreen Land Developers, Inc., supra,* in sup-
port of its decision. The court's reliance is misplaced. In
*Black,* the buyer of real property sued to enforce an oral

---

parol evidence is generally admissible. However, a finding of nonintegration is
unusual where, as here, the parties have formally executed a valid and binding
written lease.

agreement with the seller that a particular view would never be impaired. The earnest money agreement contained a boilerplate integration clause which stated: "'There are no verbal or other agreements which modify or affect this agreement.'" *Black*, at 250. Although this court found that evidence of the oral covenant conflicted with the boilerplate integration clause, we held that parol evidence was admissible to show that the integration clause was false because "'a party to a contract is not bound by a *false recital of fact*". (Italics ours.) *Black*, at 250, quoting *Cook v. Vennigerholz*, 44 Wn.2d 612, 616–17, 269 P.2d 824 (1954). However, we also found that evidence of the oral covenant did not conflict with the *substantive* provisions of the deed and thus was admissible under the doctrine of partial integration. In this case, evidence of the oral agreement does conflict with a substantive provision of the written lease—a cancellation clause—and is therefore inadmissible under the parol evidence rule.

Even if the oral agreement is not inconsistent with the terms of the written lease, petitioners contend that it is too vague and indefinite to support a decree of specific performance. We agree. It is well established that a contract, oral or otherwise, is not subject to specific performance unless the precise act sought to be compelled is clearly ascertainable. *State ex rel. Bain v. Clallam Cy. Bd. of Cy. Comm'rs*, 77 Wn.2d 542, 547, 463 P.2d 617 (1970); *St. Paul & Tacoma Lumber Co. v. Fox*, 26 Wn.2d 109, 132, 173 P.2d 194 (1946). In other words, a court of equity cannot decree specific performance of a contract unless it can determine what must be done to constitute performance. *St. Paul & Tacoma Lumber Co. v. Fox, supra* at 132.

Assuming the fact of its existence, the oral agreement here prevents petitioners from exercising their right of cancellation in the lease until the property is ready to be developed. The troublesome language is "ready to be developed"—for what purpose? And at what point in time does the triggering event occur—when and if the property is rezoned? When a building permit is issued? Neither

party has been able to give a satisfactory answer to these questions. Even the trial court was unable to determine what the parties meant by "ready to be developed." The court merely found that, in any event, the triggering event had not yet occurred. Such a finding does not provide an adequate basis for an order of specific performance of the oral agreement. We conclude, as a matter of law, that the oral agreement in this case is so indefinite and uncertain as to be incapable of specific performance.

As an alternative basis of relief, the trial court held that petitioners were equitably estopped from exercising their right of cancellation under the lease until the property was ready to be developed. The doctrine of equitable estoppel rests on the principle that "a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon." *Wilson v. Westinghouse Elec. Corp.,* 85 Wn.2d 78, 81, 530 P.2d 298 (1975). Three things must occur to create equitable estoppel: (1) an admission, statement or act inconsistent with the claim afterward asserted; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act. *Liebergesell v. Evans,* 93 Wn.2d 881, 888–89, 613 P.2d 1170 (1980); *Kessinger v. Anderson,* 31 Wn.2d 157, 170, 196 P.2d 289 (1948).

The trial court found all three elements of equitable estoppel to be present here. The court found that petitioners' assurances to respondents in an April 1979 letter that "we expect considerable time for governmental processes" and that respondents would be kept "informed as to any developments that would affect your lease on the airfield" are inconsistent with petitioners' position as to their right of cancellation. The court also found that in reliance upon these assurances, respondents purchased new mowers, a new airplane to tow gliders, and a year's supply of aviation fuel. Finally, the court found that respondents would be

injured if petitioners were allowed to repudiate their former statements.

■ Petitioners contend that even if applicable at one time, equitable estoppel no longer provides an adequate basis for preventing petitioners from exercising their right of cancellation under the lease. We agree. The time during which respondents would have been injured if petitioners had been allowed to repudiate their statements in the April 1979 letter has long since passed. Respondent's expenditures in reliance upon petitioners' statements were, by his own testimony, merely preparation for the upcoming 1980 flying season. While it may have been proper to enjoin petitioners from canceling the lease until the end of the 1980 season, the trial court stretched the doctrine of equitable estoppel beyond its limits by enjoining petitioners from canceling the lease until the property is ready to be developed.

In light of our disposition of the issues discussed above, we need not reach other issues raised by petitioners. The decision of the Court of Appeals affirming the trial court's judgment is hereby reversed. The case is remanded to the trial court for judgment in accordance with this opinion.

DOLLIVER, C.J., and UTTER, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied May 27, 1986.