**MT. ST. HELENS MINING AND RE-COVERY LIMITED PARTNER-SHIP, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. C99–5687FDB.**

United States District Court, W.D. Washington. at Tacoma.

Nov. 7, 2001.

Mark Millard, Engstrom, Lipscomb & Lack, Los Angeles, CA, Robert Hailey, Randall & Danskin, Spokane, WA, for plaintiff.

Maureen Murphy, Mark Clutkow, Assistant U.S. Attorney, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BURGESS, District Judge.

On January 31, 1986, this Court entered a Stipulation and Order of Dismissal in the matter of *Dan Fer Investment Corporation v. United States of America*, No. C85–37T. In the Stipulation, the parties agreed as follows:

> Plaintiff will cause its mining claims in the Green River–Polar Star area, within the boundaries of the Mount St. Helens National Volcanic Monument, to be donated by Quit Claim Deed to the Secretary of Agriculture, in accordance with 7 U.S.C. § 2269 and Section 170 and other sections, Tax Code. The Secretary of Agriculture hereby agrees to accept said donation.

Stipulation and Order of Dismissal, Case No. C85–37T. Pursuant to the stipulation, the Court dismissed the matter without prejudice. *Id.* Fourteen years later, the Mt. St. Helens Mining and Recovery Limited Partnership ("MSH Mining"), the successor in interest to the Dan Fer Investment Corporation ("Dan Fer"), announced that it was withdrawing its "offer" to donate its Green River–Polar Star mining claims. MSH Mining then instituted the current action for declaratory relief and mandamus. Plaintiff seeks to force the United States to acquire the claims covered by the stipulation as well as certain other claims within the Mount St. Helens National Monument (the Monument). Plaintiff also seeks relief for what it alleges is a taking of its mining claims adjacent to the Monument.

The matter is currently before the Court on Defendants' Motion to Dismiss, in Part, or for Partial Summary Judgment Regarding Plaintiff's Unpatented Mining Claims within the Monument. Plaintiff has filed a Cross Motion for Partial Summary Judgment Regarding Plaintiff's Patented and Unpatented Mining Claims within the Monument. For the reasons explained below, the Court will grant Defendants partial summary judgment concerning Plaintiff's unpatented, Green River–Polar Star claims formerly owned by Dan Fer, and deny Plaintiff's motion for partial summary judgment.

## I. Background.

In August, 1982, Congress passed An Act to Designate the Mount St. Helens National Volcanic Monument (the "Monument Act"), Pub.L. No. 97–243, 96 Stat. 301. Designed to protect the unique ecosystem created by the 1980 eruption of Mount. St. Helens, the Monument Act provided in pertinent part as follows:

> Sec. 3(a) The Secretary [of Agriculture] shall acquire all lands and interests in lands within the boundaries of the Mon-

ument by donation, exchange, ... or purchase with donated or appropriated funds ... except that the Secretary may acquire mineral and geothermal interests only by exchange. It is the sense of the Congress that in the case of mineral and geothermal interests such exchanges should be completed within one year after the date of enactment of this Act. Those mining claims in the Green River–Polar Star area shall not be acquired without the consent of the owner.

Pub.L. No. 97–243, 96 Stat. 301.

At the time the Monument Act was passed, Dan Fer owned various mining claims within and adjacent to the Monument's boundaries. On February 11, 1983, Dan Fer notified the Department of Agriculture (the "Department") that pursuant to the Monument Act, it consented to the exchange of its unpatented mining claims within the Green River–Polar Star area of the Monument. *See* Letter to John R. Block, Exhibit 3 to Dec. of Mark E. Millard (dkt.# 36). The Department declined to acquire Dan Fer's unpatented claims, and Dan Fer filed suit in this Court seeking declaratory and injunctive relief. *See* Complaint for Declaratory and Injunctive Relief, Case No. C83–848T, attached as Exhibit 5 to Defendants' Memorandum in Support of Motion to Dismiss (Defendants' Memorandum) (dkt.# 26). The Court dismissed the action when Dan Fer failed to respond to a motion for summary judgment. At Dan Fer's request, the Court amended the dismissal to be without prejudice. *See* Order dated May 24, 1984, attached as Exhibit 6 to Defendants' Memorandum (dkt.# 26).

Several months later, Dan Fer renewed its lawsuit. *See* Plaintiff's Complaint for Declaratory Judgment and Judicial Review, Case No. C85–37T, attached as Exhibit 7 to Defendants' Memorandum (dkt.# ). Dan Fer moved for summary judgment, and the Court denied the mo-

tion without comment. Afterwards, the parties reached the agreement embodied in the Stipulation and Order of Dismissal quoted above.

Following entry of the Stipulation and Order of Dismissal, Dan Fer did not in fact donate its Green River–Polar Star area mining claims to the United States. Instead, Dan Fer argued that its obligations under the Stipulation were conditional on the Department's appraising the claims so as to facilitate Dan Fer's application for a tax deduction. *See* Declaration of Arno Reifenberg and attachments, Exhibit 15 to Defendants' Motion to Dismiss (dkt.# 26). The Department contended it had no such obligation under the Stipulation, and refused to agree to amend the stipulation. *Id.* The acquisition of Dan Fer's claims in 1994 by MSH Mining did nothing to change the stalemate between the parties.

Dan Fer's mining claims were not the only ones in the Monument that the Department was unable or unwilling to acquire. Congress became concerned about the slow pace of the acquisitions, and in 1998 responded by enacting the Mount St. Helens National Volcanic Monument Completion Act (the "Completion Act"), Pub.L. No. 105–279, 112 Stat. 2690. After stating that its purpose was "to facilitate and otherwise provide for the expeditious completion of the previously mandated Federal acquisition of private mineral and geothermal interests within the Mount St. Helens National Volcanic Monument," the Completion Act proceeded to lay out in detail the means by which certain claims held by the Burlington Northern, Inc. and the Weyerhauser Company were to be exchanged for $4,200,000 in monetary credits. Completion Act, Sec. 2(b) and Sec. 3, 112 Stat. 2690–92. The Completion Act concluded with the following statement:

(h) OTHER MINERAL AND GEOTHERMAL INTERESTS.—Within 180

days after the date of the enactment of this subsection, the Secretary shall submit to the Committee on Resources of the House of Representatives and the Committee on Energy and Natural Resources of the Senate a report (1) identifying all remaining privately held mineral interests within the boundaries of the Monument ... and (2) setting forth a plan and a timetable by which the Secretary would propose to complete the acquisition of such interests.

Completion Act, Sec. 3(h), 112 Stat. 2692–93.

The Department of Agriculture responded to this Congressional mandate by issuing a report stating in pertinent part:

[T]he Dan Fer Investment Corporation, previous owner of many of these [unpatented] claims, is currently under court order to donate these claims to the Forest Service pursuant to a stipulation of the Federal District Court in 1985 (Civil No. C85–37T). The Dan Fer Investment Corporation, which is now the Mt. St. Helens Consolidated Mining Company, interprets the court decision to require the Forest Service to appraise the property so that the Company has a value to provide to the IRS in claiming a tax deduction for the donation. The Forest Service disagrees with this interpretation of the order. Forest Service policy and procedures for donations do not allow for a Forest Service appraisal and provide that valuation is the responsibility of the party making the donation. The Forest Service is still waiting for this donation to be completed and it would be improper to proceed with any other negotiations involving these claims until this matter is resolved.

Report on Other Mineral and Geothermal Interests Pursuant to the Mount St. Helens Completion Act, p. 4, attached as Exhibit to Millard Dec. (dkt.# 36). In addition, the Department approached MSH Mining to begin negotiations concerning acquisition of its patented claims in the Spirit Lake area. MSH Mining refused to negotiate concerning its patented claims without first resolving the status of its unpatented claims in the Green River–Polar Star area. *See* Dec. of Vicky Wessling and attachments, Exhibit 16 to Defendants' Motion to Dismiss (dkt.# 26) When the Department stuck to its position as outlined in the Report above, MSH Mining withdrew its "offer" to donate the Green River–Polar Star claims, and initiated the instant action. *See* Complaint, ¶ XV (dkt.# 1).

## II. Analysis

### 1) *Defendants' Motion to Dismiss, in Part, or for Partial Summary Judgment Regarding Plaintiff's Unpatented Mining Claims within the Monument.*

■ Defendants' motion concerns only those mining claims subject to the Stipulation and Order of Dismissal entered in 1986: namely, those unpatented mining claims in the Green River–Polar Star area of the Monument that were formerly owned by Dan Fer. The Court will refer to these claims as the Green River–Polar Star claims.

■ Defendants first argue that Plaintiff's causes of action concerning the Green River–Polar Star claims are barred by the statute of limitations. According to 28 U.S.C. § 2401(a), "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." This bar is jurisdictional: under the doctrine of sovereign immunity, the terms of Congress's consent to suit define the extent of the federal courts' power to decide a case. *Sisseton–Wahpeton Sioux Tribe v. United States*, 895 F.2d 588 (9th Cir.1990). If Defendants were correct

concerning the statute of limitations, this Court would have to dismiss the time barred claims pursuant to Fed.R.Civ.P. 12(b)(1). However, Defendants fail to understand when Plaintiff's relevant right of action accrued, and their argument from the statute of limitations fails.

Plaintiff's predecessor in interest Dan Fer was aware of Defendant's alleged violations of the Monument Act at least by 1983 when it filed its initial lawsuit in this Court. If Plaintiff's claims arose only under the Monument Act, they would be time barred by 28 U.S.C § 2401(a). However, the Completion Act at least arguably also mandates that Defendants acquire Plaintiff's Green River–Polar Star claims. Defendants did not (allegedly) violate this mandate until 1999, when they issued the required report and stated that they did not intend to acquire the relevant claims. Because the Completion Act incorporates the Monument Act by reference, any and all of Plaintiff's claims under the Monument Act can be restated as claims under the Completion Act. As such, they did not accrue until 1999, and as a consequence are not time barred.

■■■ Defendants' second argument is that Plaintiffs' causes of action concerning the Green River–Polar Star claims are "barred" by the Stipulation and Order of Dismissal entered in 1986. *See* Memorandum in Support of Defendants' Motion, p. 3, 19 (dkt.# 25). Despite their use of the term "barred," Defendants do not explicitly raise the defense of claim preclusion. In light of the fact that the Stipulation and Order of Dismissal provided for dismissal *without prejudice*, any such defense would necessarily fail. "The effect of the words 'without prejudice' is to prevent the decree of dismissal from operating as a bar to a subsequent suit.". *Black's Law Dictionary*

469 (6th ed.1990). *See also* 21 A Fed. Proc., L.Ed. § 51:246. A dismissal without prejudice is not a final adjudication on the merits, *see, e.g., In re Corey,* 892 F.2d 829 (9th Cir.1989), and .as a consequence MSH Mining is free to re-litigate the precise issues covered by the Stipulation signed by its predecessor in interest.

■■■ That Plaintiff is free to re-litigate the issues covered by the Stipulation does not, however, mean that the Stipulation has no effect. By its plain terms, the Stipulation bound Plaintiff's predecessor in interest to donate its unpatented claims in the Green River–Polar Star area to the Department of Agriculture. The Stipulation also requires the Department of Agriculture to accept the donation. Such acceptance is valuable consideration for the donation, because it is a necessary precondition for obtaining a tax deduction from the IRS. As documentation of a bargained for exchange of value, the Stipulation is a valid contract. It is not, as Plaintiff would have it, a mere "offer" it can withdraw at its pleasure. Nor is it ambiguous, and parol evidence is not admissible to contradict or supplement its terms. *See Emrich v. Connell,* 105 Wash.2d 551, 555–56, 716 P.2d 863 (1986) (noting that "[p]arol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature and which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake").

As a consequence of the Stipulation signed by its predecessor Dan Fer, MSH Mining has no real interest in the Green River–Polar Star claims.[1] Instead, MSH Mining merely retains paper title to claims properly belonging to Defendants. MSH Mining is free to argue that the Comple-

---

**1.** Plaintiff makes no effort to argue that it took the Dan Fer claims without notice of the Stipulation.

tion Act requires Defendants to provide it with additional valuable consideration for parting with its mere paper title to the Green River–Polar Star claims, but this argument fails as a matter of law. Although the Completion Act calls for the Department of Agriculture to acquire "all remaining privately held mineral interests within the boundaries of the Monument," *see* Completion Act, Sec. 3(h), 112 Stat. 2692–93, nothing in the text or the legislative history of the act remotely begins to suggest that it requires the Department to pay for the mere paper records of title to *interests that it had previously properly acquired.*[2]

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In the instant case there is no genuine issue of fact concerning the parties' obligations under the Stipulation and Order of Dismissal. Nor, despite Plaintiff's assertions to the contrary, is there any *material* dispute concerning the precise identity of the claims covered by the Stipulation. The Stipulation covers all of MSH Mining's claims derived from Dan Fer "in the Green River–Polar Star area, within the boundaries of the Mount St. Helens National Volcanic Monument." Stipulation and Order of Dismissal, Case No. C85–37T. Whether Plaintiff has other unpatented mining claims within the Monument that are covered by the Completion Act is an issue the Court will address at a later date, if it becomes necessary to do so. Finally, given the Stipulation, Defendant is entitled to judgment that the Completion Act does not require it to provide additional compensation to Plaintiff for its paper title to the Green River–Polar Star claims.[3]

### 2. *Plaintiff's Cross Motion for Partial Summary Judgment.*

Plaintiff has moved for partial summary judgment declaring that Defendants are obliged to acquire Plaintiff's patented and unpatented mining claims in the Monument. Plaintiff also requests that various orders of mandamus be issued requiring Defendants, amongst other things, to cease and desist from continuing to challenge the validity of Plaintiff's mining claims and to allow MSH Mining "to conduct sampling,

---

**2.** After the Completion Act was signed into law, Congresswoman Linda Smith of Washington issued a press release stating:

> This law will help many families, such as Dan Fernandez', whose father purchased 40 mining claims in the Mount St. Helen's [sic] area 35 years ago. For 16 years, the federal government has tied up his family holdings in legal limbo. So I am very pleased that the President signed my bill, that families and businesses have hope now that their claims will be settled fairly and quickly, and that generations to come will be able to observe nature's course in the Mount St. Helen's [sic] area.

Millard Dec., exhibit 1 (dkt.# 36). The Court has found *no* reference to the Dan Fer claims in any published Congressional comment made prior to enactment. Like the Completion Act itself, Congressional debate and discussion focused on the claims of Burlington Northern, Inc. and the Weyerhauser Company. *See, e.g.,* Remarks of Congressman Miller, 144 Cong.Rec. H8474; 143 Cong.Rec. D1165–66; *and* House Report No. 105–704. Plaintiff's assertion that Congresswoman Smith's statement "evidences the desire of Congress to specifically compensate the Fernandez family for the subject Dan Fer claims" is at best hyperbole. *See* Plaintiff's Reply, p. 13 (dkt.# 44).

**3.** By so ruling, the Court is not "enforcing" the Stipulation. *Compare* Plaintiff's Opposition to Motion to Dismiss, p. 26 (dkt.# 34). The Court is simply determining that Defendants have a valid defense to Plaintiff's causes of action concerning the Green River–Polar Star claims. Because Defendants have not asked the Court to enjoin Plaintiff to finalize its donation, the Court will not speculate on whether it has jurisdiction to enter such an order.

assaying, testing and drilling and other demanded site activities, on each and every one of MSH Mining's claims." Plaintiff's Cross Motion for Partial Summary Judgment, pp. 2–3 (dkt.# 35).

### A. Plaintiff's Request for Declaratory Judgment.

■ A summary judgment motion seeking declaratory relief, like any other summary judgment motion, must be denied when there is either a genuine dispute concerning a material fact or when the moving party is not entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Because the federal courts may not issue mere advisory opinions, a court confronted with a request for declaratory judgment must also ensure that the point at issue involves "a case of actual controversy." 28 U.S.C. § 2201(a).

In so far as Plaintiff's motion for summary declaratory judgment concerns unpatented claims in the Green River–Polar Star area acquired from Dan Fer, the motion will be denied because Plaintiff has failed to show that it is entitled to judgment as a matter of law. The Court's reasons for reaching this conclusion are explained in Section II 1) above. In so far as Plaintiff's motion concerns *other* unpatented claims within the Monument not covered by the Stipulation and Order of Dismissal, there is a genuine issue of fact concerning whether Plaintiff possesses such claims. *See, e.g.,* Plaintiff's Response to Glickman's First Set of Interrogatories, p. 39, In 23–27, attached as Exhibit 3 to Defendants' Motion to Dismiss (dkt.# 26). Summary judgment on such alleged unpatented claims within the Monument and not derived from Dan Fer is not proper at this time.

■ As for Plaintiff's *patented* claims in the Spirit Lake area within the Monument, the Court is not convinced that there is an "actual controversy" regarding Defendants' duty of acquisition by exchange. Plaintiff has not presented the Court with any evidence that Defendants have *ever* denied their obligation to acquire these claims, provided that they are verified. On the record before the Court, it appears that the primary reason Defendants have not yet acquired the patented claims is that Plaintiff and its predecessor Dan Fer have refused serious negotiations, preferring to condition such negotiations on receipt of unwarranted concessions regarding the unpatented claims in the Green River–Polar Star area. Because the parties agree—and have always agreed—on Defendants' duty to acquire properly verified patented claims within the Monument, there is no "actual controversy" concerning this duty that warrants declaratory resolution.[4] To the extent Plaintiff is seeking a declaration that Defendants must acquire its patented claims *whether they are verified or not,* there is an actual controversy, but not one Plaintiff is entitled to win. Neither the Monument Act nor the Completion Act requires Defendants to leap—and expend large amounts of public resources—before they look. Nor do the circumstances of this case warrant the Court to use its equitable powers to bar Defendants from carrying out a routine title investigation.

### B. Plaintiff's Requests for Mandamus

■ Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to

---

4. Put another way, a party's "concession" that it owes its opponent a legal duty will not support summary judgment for the opponent when the "concession" merely reiterates the conceding party's longstanding position, and where its failure to perform its duty is at least partly the fault of the opposing party.

perform a duty owed to the plaintiff." Mandamus is proper when there is a showing of a clear legal right to the relief sought, the Defendant has a clear legal duty to perform the particular act requested, and there is no other relief available. *Blaney v. United States*, 34 F.3d 509 (7th Cir.1994).

Plaintiff's requests for mandamus concerning its unpatented mining claims in the Green River–Polar Star area must be denied because *Defendants have no further duties towards Plaintiff with regard to those claims.*[5] The reasons for this conclusion are set forth in Section II 1) above. Plaintiff's request for mandamus concerning *other* unpatented claims within the Monument must be denied at the summary judgment stage because there is a genuine issue of fact concerning the existence of such claims.

■ What is left of Plaintiff's request for mandamus relates to its patented claims within the Monument.[6] Plaintiff seeks an order requiring, amongst other things, that the patented claims "be immediately opened for entry by MSH Mining and/or their representatives to conduct sampling, assaying, testing and drilling," and that Defendants "cease and desist asserting and/or implementing unnecessary environmental rules and regulations." Plaintiff's Cross Motion, pp. 2–3 (dkt.# 35). The basis of Plaintiff's request is Defendant's alleged unlawful withholding or unreasonable delay of required actions. In particular, Plaintiff's find it "incredibl[e]" that "Defendants have yet to take the nec-

essary actions to permit a proper evaluation ... and to fully and properly appraise these claims." Plaintiff's Memorandum of Law in Support of Cross Motion, p. 23 (dkt.# 35).

■ Confronted with a claim of unreasonably delayed agency action, "the first stage of judicial inquiry is to consider whether the agency's delay is so egregious as to warrant mandamus." *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 79 (D.C.Cir.1984) ("TRAC"). The TRAC court proceeded to indicate six criteria that provide "useful guidance" in evaluating such claims, criteria that have been endorsed by the Court of Appeals for the Ninth Circuit. *See TRAC*, 750 F.2d at 80; *and Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir.1997). Neither the TRAC court nor the Ninth Circuit, however, has declared that a district court can *only* consider the TRAC factors. None of the TRAC factors explicitly directs the trial court to consider the extent of the plaintiff's responsibility in causing the delay, but assessing such responsibility seems essential in determining how "egregious" is the agency's inactivity. As the Court has previously discussed, Plaintiff and its predecessor Dan Fer are at least co-responsible for delays in completing the acquisition of the patented claims. The Court will not invoke its equitable powers to issue a writ of mandamus in these circumstances. *See, e.g., Holmes v. United States*, 541 F.2d 1243 (7th Cir.1976) (noting that issuance of

---

5. Apart from their duty to accept these claims when and if they are finally donated.

6. In its current motion Plaintiff does not seek mandamus relating to its mining claims outside of but adjacent to the Monument. In reaching this conclusion, the Court takes Plaintiff at its word in captioning its motion "Plaintiff's Cross–Motion [for] Partial Summary Judgment Regarding Plaintiff's Patent-

ed and Unpatented Mining Claims *Within the Monument*" (emphasis added), and in focusing its concluding prayer for relief on "mining claims within the Monument." *See* Plaintiff's Cross Motion (dkt.# ). Plaintiff's references in the same motion to "each and every one of MSH Mining's claims" and to "all MSH Mining's unpatented mining claims" are construed as limited by the caption and the concluding prayer for relief.

a writ of mandamus "is controlled by equitable principles").

■ In addition, under the traditional three-part test for mandamus, the Court must deny Plaintiff the relief requested because it has failed to demonstrate that it has a clear legal right to the relief sought, in particular to an order allowing it to drill and build roads in a National Monument. *See Blaney v. United States*, 34 F.3d 509 (7th Cir.1994) (setting forth traditional test). The Monument and Completion Acts require Defendants to acquire by exchange Plaintiff's patented claims within the Monument, should they be verified. However, these Acts do not specify the procedures to be used to value the claims and accomplish the exchange. There may well be other laws or regulations setting forth in detail the appraisal procedures that must be followed in these circumstances, but Plaintiff has not identified them for the Court. As a consequence, Plaintiff's references to Defendants' alleged failures to take "necessary" actions, to permit "proper" evaluations, and to "fully" and "properly" appraise are empty rhetoric.

When the parties get down to negotiating the exchange of Plaintiff's patented claims, they will find themselves in a complicated bargaining game. Although this Order simplifies matters by taking the unpatented Green River–Polar Star claims off the table, it by no means guarantees a quick and successful exchange. Indeed, the Court can imagine that Defendants might now be tempted to stall, since they are in de-facto possession of the claims and a thorough appraisal—with its attendant road building and drilling—might be anathema to some of Defendants' constituencies. The mere possibility of bad faith bargaining by Defendants in the future, however, does not justify issuing a writ of mandamus for Plaintiffs. Likewise, the mere possibility that Plaintiffs will insist on an exceptionally thorough appraisal in what they concede is a fragile and valuable ecosystem, not because of what they hope it will reveal about the claims' value, but rather as a means to blackmail Defendants into sweetening the pot, would not justify pre-emptive injunctive relief for Defendants. This Court's jurisdiction simply does not allow it to resolve hypothetical future disputes.

## Conclusion

Plaintiff has requested oral argument on its cross motion. Having carefully considered the voluminous paper records submitted by each party, the Court determines that oral argument is unnecessary.

ACCORDINGLY, the Court hereby ORDERS that:

1) Defendants' Motion to Dismiss, in Part, or for Partial Summary Judgment Regarding Plaintiff's Unpatented Mining Claims within the Monument (dkt.# 21) is GRANTED;

2) Defendants are entitled to judgment as a matter of law that their obligations concerning Plaintiff's unpatented mining claims in the Green River–Polar Star area, derived from Dan Fer, are fully specified in the Stipulation and Order of Dismissal entered by this Court on January 31, 1986 in Case No. C85–37T;

3) Apart from accepting the Green River–Polar Star area claims when and if the donation called for in the Stipulation and Order of Dismissal is finalized, Defendants owe Plaintiff no further consideration for these claims; and

4) Plaintiff's Cross Motion for Partial Summary Judgment Regarding Plaintiff's Patented and Unpatented Mining Claims within the Monument (dkt.# 35) is DENIED.